CITY OF DETROIT *v.* WOOD.

1. CRIMINAL LAW—AUTOMOBILES—DRIVER IDENTIFICATION AT ACCI-DENT.

City ordinance requiring the driver of any vehicle involved in an accident resulting in damage to property to stop and identify himself *held,* to require the motorist to stop and make an attempt, reasonable in light of the circumstances, to effect identification, and not to penalize innocent noncompliance with the ordinance (Detroit Ordinance § 38–13–1[b]).

2. SAME—AUTOMOBILE—ACCIDENT—IDENTIFICATION.

Driver involved in property damage automobile accident, who stopped his car, talked to driver of other car, at least twice requested that the police be called, held his driver's license in his hand, and extended it to the other driver who made no effort to examine it, and who then agreed with the other driver that they would meet at a cocktail lounge some miles away to exchange the necessary information, *held,* to have made a reasonable attempt to identify himself in compliance with city ordinance (Detroit Ordinance § 38–13–1[b]).

Appeal from Recorder's Court of Detroit, Traffic and Ordinance Division; Wood (Andrew C.), J. Submitted Division 1 November 9, 1967, at Detroit. (Docket No. 2,029.)   Decided March 27, 1968.

Cornelius Wood was convicted under a city ordinance of failure to identify himself at the scene of an accident.   Defendant appeals.   Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  7 Am Jur 2d, Automobiles and Highway Traffic § 250.
Construction and effect of statute in relation to conduct of driver of automobile after happening of an accident.   16 ALR 1425, 66 ALR 1228, 101 ALR 911.

*Robert Reese,* Corporation Counsel and *Robert D. McClear,* Assistant Corporation Counsel, for plaintiff.

*Albert Green,* for defendant.

J. H. GILLIS, J. Defendant, Cornelius Wood, was involved in an automobile accident in Detroit on November 25, 1965. By a complaint dated December 21, 1965, defendant was charged with failure to identify himself at the scene of the accident, in violation of section 38–13–1(b) of the traffic ordinances of the city of Detroit.* After a nonjury trial, defendant was found guilty and sentenced to pay a $50 fine or serve 7 days in the Detroit House of Correction. Defendant appeals his conviction.

By agreement of the parties, the questions raised on appeal are the following:

(1) "Did the appellant violate an ordinance of the city of Detroit, providing for the stopping at the scene of an accident, and identification by the persons involved therein?"

(2) "Did the complaint against appellant set forth a charge constituting a violation of the city of Detroit motor and vehicle traffic ordinance?"

(3) "Was appellant denied the right to cross-examine for the purpose of impeaching testimony of people's witnesses?"

The particulars concerning the alleged violation are as follows: Defendant was driving his own car, in which Roy Parker was a passenger. The owner and driver of the other car was Joseph Pauli, who was accompanied by one Gilbert Field. Parker was

---

* The section reads: "The driver of any vehicle involved in an accident resulting in damage to property shall immediately stop such vehicle at the scene of such accident and shall give his name, address and the registration number of his vehicle, and also the name and address of the owner, and exhibit his operator's or chauffeur's license to the driver or occupants of any other vehicle involved."

a mutual friend of defendant and Pauli. Each driver stopped his automobile immediately after the accident. Defendant asked Parker to remove defendant's identification papers from the glove compartment; Parker did so and handed them to defendant as they were walking toward Pauli's automobile.

Parker and Pauli at once struck up a conversation during which Parker suggested that they all adjourn to a specified cocktail lounge, some miles away, for the purpose of exchanging the necessary information. Pauli assented to Parker's proposal. During this conversation, defendant at least twice requested that the police be summoned to the scene. Defendant held his driver's license in his hand while this was going on; he extended it to Pauli, but Pauli made no effort to examine it. This much was uncontradicted.

According to defendant and Parker, the two drivers were introduced to each other by name. Pauli denied this. Field, Pauli's passenger, gave unclear testimony concerning the alleged introduction.

Pursuant to the agreement between Pauli and Parker, the parties returned to their automobiles and drove to a parking lot where Parker picked up his own car. Parker then led the way to the cocktail lounge with defendant and Pauli following. Defendant and Parker stopped at the designated spot only to observe Pauli continue past them. Pauli returned to the scene of the accident, hailed a passing police officer and reported the accident.

Defendant made a reasonable attempt to effect the identification required by the ordinance; his efforts were unsuccessful, through no fault on his part. It does not appear to us that the ordinance was intended to penalize innocent noncompliance. If such were the intent of the enactment, the driver who waits at the scene for the arrival of the police

would be guilty of breaking the law simply because the *other* driver had fled before identifications could be exchanged. The very absurdity of such a result is persuasive that it was not intended. We therefore read the ordinance as requiring a motorist to stop and make an attempt, reasonable in light of the circumstances, to effect identification. Defendant did just that.

Having ruled that defendant discharged the duty imposed upon him by the ordinance, we do not reach the other issues presented.

The conviction and sentence are set aside.

Levin, P. J., and Quinn, J., concurred.