Filed 5/22/22  P. v. Joseph CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C093949 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20190008971) |
| v. | |
| TINISHA NATE JOSEPH, | |
| Defendant and Appellant. | |

Defendant Tinisha Nate Joseph was found guilty by a jury of felony hit and run. Defendant appeals and contends: (1) insufficient evidence demonstrated she knew or should have known she injured a person in the accident; and (2) the court prejudicially erred in instructing the jury on mistake of law. The People concede it was error for the court to instruct the jury on mistake of law (CALCRIM No. 3407), but argue any error was harmless. We agree with the People and affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 10:00 p.m. on a February night, B. Z., a six-foot tall and 220-pound man, was riding his bicycle when he was hit by defendant's car. He flew in the air, landed in the road, and was run over by a second vehicle, causing his death.

The accident was seen by another motorist. That motorist saw B. Z. standing at the corner of an intersection with his bike and saw defendant make a left turn through that intersection traveling about 20 miles an hour. The motorist heard a "smack" and, when she looked through her rearview mirror, she saw a person fly into the air. She also saw a car -- roughly fitting the description of defendant's car -- stop for a few seconds, and then continue away from the accident. Soon after, a tow truck driver saw B. Z. in the street and saw a mid-sized, four-door sedan run over him. The tow truck driver saw the sedan "flip up in the air and go back down, and the next thing [he] saw was a person laying in the road."

During the investigation, Stockton Police Officer Derek Braga found parts of a red bicycle and B. Z.'s personal effects strewn across the intersection and saw a large pool of blood in the middle lane of the road. Officer Braga also found the license plate from defendant's car. Upon seizure of the car, Officer Braga saw damage to its front bumper "just off of the front center," damage to the lower grille and driver's side hood, as well as dents to the driver's side A-pillar. Officer Braga discovered red paint from B. Z.'s bicycle on the car's fog-light and on the front left-side bumper. Officer Braga was of the opinion that the initial location of impact was the driver's side hood. Officer Braga further determined B. Z. was at fault for the accident because he rode his bicycle across lanes of traffic in violation of law.

Defendant testified in her own defense. She claimed that, as she turned through the intersection, she heard a loud sound, like a "bomb," but since it was "completely dark," she could not see anything around her. After the accident, defendant drove approximately 500 feet and stopped in a parking lot with lighting. In the parking lot, she

2

examined the car and noticed a grapefruit-sized crack to the bottom of the windshield on the driver's side. She also saw a dent in the hood and left fender. She did not observe any other damage to the car and could not call anyone because her phone battery was dead. From the parking lot, defendant looked toward the scene of the accident but did not see anything. She did not want to return to the scene of the accident because she was "[k]ind of scared to go back that way." After about two minutes, defendant left the parking lot, and continued home without further examining the car. Defendant testified she would have stopped had she known someone was injured in the accident. She claimed she had "never been in that predicament," and as a result she did not know what to do in the moment.

Defendant did not report the incident that evening but discussed it at length with her boyfriend. The next day, defendant noticed the front-facing license plate was missing, the A-frame was damaged, and the car's hood and fender were scratched and dented. That day, defendant and her boyfriend began arrangements to have the car towed and repaired.

At trial, the court provided the mistake of law instruction over defendant's objection, which advised the jury it was not a defense to the crime "if the defendant did not know she was breaking the law or that she believed her act was lawful." The court also instructed jurors that: "[s]ome of these instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I'm suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." In closing, the prosecution did not argue mistake of law was not a defense to the crime. However, defense counsel addressed mistake of law by asserting that mistake was not her client's defense. Instead, defense counsel argued the damage to defendant's car did not give her reason to believe she was involved in an accident that injured another person.

3

A jury found defendant guilty of leaving the scene of an accident involving an injured person. The court granted defendant probation, conditioned on defendant serving 120 days in county jail.

DISCUSSION

I

*Substantial Evidence Supports Defendant's Conviction*

Defendant contends there was not substantial evidence to support her conviction for leaving the scene of an accident following death or injury. Specifically, she argues there was not substantial evidence she knew or should have known she had injured another when she left the scene of an accident. We disagree.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) " 'In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment.' " (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate " 'that upon no hypothesis whatever is there substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

In relevant part, a felony hit and run conviction requires the prosecution to prove the defendant knew or *should have known* the accident injured another person. (*People v. Rocovich* (1969) 269 Cal.App.2d 489, 492-493; CALCRIM No. 2140.) Actual

4

knowledge is not a requirement to convict. (*People v. Mace* (2011) 198 Cal.App.4th 875, 881.) The requisite knowledge may be actual or constructive and may be proved by circumstantial evidence. (*People v. Harbert* (2009) 170 Cal.App.4th 42, 52-55.) Consciousness of guilt may establish knowledge as will false statements or the driver's actions following the accident. (*Harbert*, at p. 56; *People v. Bammes* (1968) 265 Cal.App.2d 626, 634.)

Relevant factors that demonstrate constructive knowledge include, but are not limited to, the height or location where the car is damaged, the extent of the damage, the size and weight of the object struck, and defendant's conduct after the collision. (*People v. Harbert*, *supra*, 170 Cal.App.4th at p. 56; *People v. Kuhn* (1956) 139 Cal.App.2d 109.) Force that reaches the windshield is unignorable and indicative of a collision with a person. (*Harbert*, at p. 56; *People v. Kidane* (2021) 60 Cal.App.5th 817, 826; *People v. Wolf* (1978) 78 Cal.App.3d 735, 738.)

Applying these factors here, sufficient evidence supports defendant's conviction. Defendant drove through an intersection and heard a sound resembling a "bomb." She hit a 220-pound man who flew in the air in front of her and struck her windshield, causing a grapefruit-sized crack. Defendant stopped her car and noticed damage to the hood and driver's side fender. In total, the car had extensive damage including to the left bumper, lower grille and driver's side hood, and dents to the driver's side A-pillar. There was also red paint on the car's fog light and on the front left-side bumper, supporting the conclusion B. Z.'s body struck the driver's side hood. This evidence supports the reasonable inference B. Z. hit the windshield directly in front of defendant such that she should have known she hit a person.

Further, defendant's conduct after the collision also supports the inference she knew or should have known she had hit a person. The noise and impact from the collision was such that defendant felt it necessary to immediately stop and then pull into a nearby parking lot. Defendant testified she saw some of the extensive damage to her car,

5

but instead of returning to the place of the collision, she avoided retracing her steps and drove home, as if she was avoiding learning the truth of what just occurred. She then told her boyfriend about the accident that evening, and after further discussion and assessment of the car in the morning, she immediately planned to repair the car. From this evidence, jurors could reasonably conclude defendant knew or should have known she hit and injured B. Z.

Defendant disagrees arguing, that because the area was "completely dark" and B. Z. unexpectedly rode across traffic, she could not reasonably suspect that what she hit was a person. Not so. "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Given that other witnesses saw B. Z. standing at the corner of the intersection and flying into the air after being hit by defendant, as well as lying in the street after being hit, it was reasonable for the jury to reject defendant's excuses. We are bound by that credibility determination. Accordingly, sufficient evidence supports defendant's conviction.

II

*Defendant Was Not Harmed By The Court Instructing On Mistake Of Law*

Defendant argues the evidence did not support giving a mistake of law instruction and the instructional error prevented jurors from considering her actual defense. The People concede the evidence did not support giving a mistake of law instruction, but argue that the error was harmless. We accept the People's concession, but conclude the error was harmless.

To avoid confusing or misleading the jury, a court must not instruct on irrelevant principles of law. (*People v. Saddler* (1979) 24 Cal.3d 671, 681.) It is well settled that a court errs when it gives "an instruction which, while correctly stating a principle of law,

6

has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)

Defendant appears to argue we review this error under the federal harmless error standard because it deprived her of consideration of her defense and removed the issue from the jury's consideration. Specifically, defendant argues the jury likely believed her defense was mistake of law and rejected the defense out of hand because it was instructed that mistake of law was not a defense to the crime charged

We reject this speculative argument. (See *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1381 [rejecting claim that irrelevant instruction prevented jury from considering defense]; *People v. Crandell* (1988) 46 Cal.3d 833, 872 [rejecting claim giving inapplicable instruction, invited the jury to speculate on the existence of a situation which would justify rejection of only defense].) Here, the People did not argue mistake of law in support of a hit and run conviction, and defense counsel explicitly stated defendant was not relying on that defense. Indeed, defense counsel distinguished defendant's defense from mistake of law, and expressly argued defendant did not have reason to believe she injured another person in the accident. Finally, the trial court instructed jurors that some of the instructions given may not apply to the facts as the jury determined. Nothing in this record suggests the jury applied the erroneous instruction in a way that undermined defendant's presumption of innocence or lessened the prosecution's burden of proof. (See *Olguin*, at p. 1381.) Accordingly, there was no error of constitutional magnitude.

For the same reasons, defendant cannot show prejudice under state law. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [we must reverse if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred].) As discussed, the jury knew some instructions may not apply to defendant's case and, as it pertained to mistake of law, neither of the parties relied on that theory when arguing their positions. Indeed, defendant explicitly disclaimed any reliance on that theory.

Accordingly, it is not reasonably probable the result would have been more favorable had the mistake of law instruction not been given.

DISPOSITION

The judgment is affirmed.


/s/
Robie, Acting P. J.



We concur:



/s/
Mauro, J.



/s/
Duarte, J.